UNITED STATES, Appellee,

v.

Terrance L. SPANN, Corporal, U.S. Marine Corps, Appellant.

No. 98–0769.

Crim.App. No. 96–1420.

U.S. Court of Appeals for the Armed Forces.

Argued March 3, 1999.

Decided July 23, 1999.

EFFRON, J., delivered the opinion of the Court, in which COX, C.J., SULLIVAN, CRAWFORD, and GIERKE, JJ., joined.

For Appellant: *Lieutenant Omar R. Lopez*, JAGC, USNR (argued); *Lieutenant Syed N. Ahmad*, JAGC, USNR.

For Appellee: *Major Troy D. Taylor*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief); *Lieutenant Janice K. O'Grady*, JAGC, USNR.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. He was sentenced to confinement for 1 year, forfeiture of $400.00 pay per month for 6 months, and reduction to the lowest enlisted grade. The convening authority approved these results but suspended confinement in excess of 6 months and reduction below grade E–3. The Court of Criminal Appeals affirmed. 48 MJ 586 (N.M.Ct.Crim. App.1998).

On appellant's petition, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED WHEN HE APPLIED THE CONGRESSIONALLY–PASSED "VICTIM OF CRIME BILL OF RIGHTS," 42 USC § 10606.

We hold that the military judge erred but that the error was harmless under the circumstances of this case.

I. Factual Background

Appellant was charged with rape of a civilian, Ms. R. The prosecution case consisted of testimony from Ms. R.; Special Agents (SA) Lacosta and McAlexander, who had investigated the allegation; the rape trauma nurse who examined Ms. R.; and various acquaintances of Ms. R. and appellant. The

defense presented the testimony of appellant and several of his close friends, in an effort to show that Ms. R. had consented to sexual intercourse with appellant, or, in the alternative, that appellant reasonably believed she consented. The defense witnesses also testified as to Ms. R.'s alleged drinking problem and her sexual interest in appellant.

After the defense rested, the prosecution presented testimony in rebuttal from three witnesses: SA Lacosta; Ms. Devine, a rape trauma expert; and Corporal (Cpl) Childress, who earlier had testified for both the Government and the defense regarding statements appellant made to him the morning following the rape. During the testimony in rebuttal from Ms. Devine, and prior to the testimony of Cpl Childress, the victim and her mother entered the courtroom.

Appellant moved to sequester the victim for the remainder of the trial under Mil. R.Evid. 615, Manual for Courts–Martial, United States (1998 ed.), which provides for the exclusion of witnesses from the courtroom upon the request of either party, subject to certain exceptions not relevant to the present appeal. After ascertaining that both the victim and her mother were likely to be called as government witnesses during sentencing, the military judge denied the defense motion, holding that Mil.R.Evid. 615 had been superceded by 42 USC § 10606. Section 10606 provides, in pertinent part, that officials of the federal government "engaged in the ... prosecution of crime shall make their best efforts to see that victims of crime are accorded" certain rights, including the "right to be present at all public court proceedings related to the offense, unless the court determines that testimony by the victim would be materially affected if the victim heard other testimony at trial." On appeal, appellant challenges the military judge's interpretation of the law.

## II. The Law Governing Witness Sequestration

■ In Article 36, UCMJ, 10 USC § 836, Congress has authorized the President to prescribe the rules of evidence for courts-martial. Article 36 provides that such rules "shall, so far as [the President] considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter."

Pursuant to the authority granted by Congress in Article 36, the President in 1980 promulgated the Military Rules of Evidence, including Rule 615, which provides:

At the request of the prosecution or defense the military judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and the military judge may make the order *sua sponte*. This rule does not authorize exclusion of (1) the accused, or (2) a member of an armed service or an employee of the United States designated as representative of the United States by trial counsel, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's case.

The rule was derived from the then-existing version of Fed.R.Evid. 615, with only minor changes in terminology. *See* Drafters' Analysis of Mil.R.Evid. 615, Manual, *supra* at A22–47. The President also set forth a specific procedure in Mil.R.Evid. 1102 for incorporating changes to the Federal Rules of Evidence:

Amendments to the Federal Rules of Evidence shall apply to the Military Rules of Evidence 180 days after the effective date of such amendments unless action to the contrary is taken by the President.[1]

Prior to appellant's court-martial, there were no changes in either Mil.R.Evid. 615 or Fed.R.Evid. 615. The subject of a victim's presence in the courtroom was addressed by Congress in section 502 of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789, 4820. The Crime Control Act of 1990

---

1. In 1998, the President modified this provision by providing a longer period, 18 months, between the effective date of a Federal Rule of Evidence change and its incorporation into the Military Rules of Evidence, absent action to the contrary by the President. Exec. Order No. 13086, 63 Fed.Reg. 30080 (1998), reprinted in 1998 U.S.Code Cong. & Admin.News at B44–45.

contained a lengthy and detailed compilation of diverse matters concerning crime in the United States, ranging from Title I ("International Money Laundering") to Title XXXVII ("National Child Search Assistance Act of 1990"). Title V, designated as the "Victims' Rights and Restitution Act of 1990," contained five substantive provisions: § 502, "Victims' Rights"; § 503, "Services to Victims"; § 504, "Victims of Crime"; § 505, "Extension of Deadline for Certain Provisions in Victims of Crime Act"; and § 506, "Sense of Congress With Respect to Victims of Crime."

At issue in the present appeal is § 502 (codified at 42 USC § 10606), which provides, in pertinent part:

(a) *Best efforts to accord rights.* Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that victims of crime are accorded the rights described in subsection (b) of this section.

(b) *Rights of crime victims.* A crime victim has the following rights:

. . . .

(4) The right to be present at all public court proceedings related to the offense, unless the court determines that testimony by the victim would be materially affected if the victim heard other testimony at trial.

Four years after the statute was enacted, the Department of Defense revised DOD Directive 1030.1 ("Victim and Witness Assistance") to adopt the provisions of 42 USC § 10606 as matters of Department of Defense policy. The President, however, did not modify the witness sequestration provisions in Mil.R.Evid. 615 and has not done so in the 9 years that have passed since 42 USC § 10606 was enacted.

The only litigation concerning the relationship between § 10606 and Rule 615 cited by the parties in this appeal involved the trial of Timothy McVeigh for offenses related to the destruction of the Murrah Federal Office Building in Oklahoma City, which occurred subsequent to appellant's trial. *United States v. McVeigh,* 106 F.3d 325 (10th Cir. 1997); *United States v. McVeigh,* 958 F.Supp. 512 (D.Colo.1997). In the *McVeigh* proceedings, the district court, at first on its own initiative and subsequently upon request of the defense, ordered exclusion of witnesses from the courtroom during the testimony of other witnesses, citing Fed.R.Evid. 615. The prosecution and a number of potential witnesses appealed to the Tenth Circuit, which held that the exclusion of witnesses did not fall within the limited statutory authority for an interlocutory government appeal in a criminal case under 18 USC § 3731, 106 F.3d. at 332, and that the victims did not have standing to appeal. *Id.* at 335. In the course of discussing the victims' standing, the court emphasized that § 10606 did not create any entitlement on the part of the victims to attend the proceedings, noting that the "statute charily pledges only the 'best efforts' of certain executive branch personnel to secure the rights listed." *Id.* The Court viewed the Act as an exhortation to Executive Branch officials that did not govern the rulings of the district court judge. *Id.*

Shortly thereafter, Congress amended Title 18 to provide that, in a non-capital case: "Notwithstanding any statute, rule, or other provision of law, a United States district court shall not order any victim of an offense excluded from the trial of a defendant accused of that offense because such victim may, during the sentencing hearing, make a statement or present any information in relation to the sentence." 18 USC § 3510(a). The legislation contained a similar provision governing capital cases, § 3510(b), and provided further that the new legislation would only "apply in cases pending on the date of the enactment"—March 19, 1997. Victim Rights Clarification Act of 1997, Pub.L. No. 105–6, § 2(d), 111 Stat. 12, 13.

The district court in the *McVeigh* proceedings viewed the new statute "as simply reversing the presumption of a prejudicial effect on victim impact testimony of observation of the trial proceedings." 958 F.Supp. at 515. The court reversed its sequestration order but reserved ruling on the admissibili-

ty of the testimony of any witnesses who observed the trial proceedings. *Id.*

Subsequent to the enactment of the 1997 legislation, an amendment to Fed.R.Evid. 615 became effective on December 1, 1998, providing an exception to the automatic exclusion provision in Rule 615 for "a person authorized by statute to be present." The Advisory Committee Note explained that the amendment was in response to 42 USC § 10606 and 18 USC § 3510.

To date, the President has not modified Mil.R.Evid. 615 in response to the amendment of Fed.R.Evid. 615.[2] If no action is taken by the President, the amendment will take effect in the military justice system in accordance with Mil.R.Evid. 1102 on June 1, 2000—a date well in the future of the present appeal, and over 5 years after appellant's court-martial.

III. Consideration of Generally Applicable Statutes in the Military Justice System

Recognizing that Congress, in the UCMJ, "establishe[d] an integrated system of investigation, trial, and appeal that is separate from the criminal justice proceedings conducted in the U.S. district courts," we have emphasized the necessity of "exercis[ing] great caution in overlaying a generally applicable statute specifically onto the military system." *United States v. Dowty,* 48 MJ 102, 106, 111 (1998). The statute at issue in the present case underscores the importance of such caution.

Of primary concern is the lack of clarity as to the effect of § 10606 in federal civilian criminal trials. Although a number of commentators have suggested that § 10606 supercedes Fed.R.Evid. 615,[3] counsel has not identified any reported cases in which a federal district court cited the statute as a basis for rejecting a defense request for the sequestration of witnesses.[4] The *McVeigh* litigation reflects the view of at least one trial court, in a high profile case, that § 10606 did not supercede Rule 615, as well as the view of at least one circuit court of appeals that the statute applies only to the prosecutor and not to the trial judge. *See* 106 F.3d at 335. Congress, reacting to the *McVeigh* litigation, did not rely on § 10606, but instead drafted a new statute applicable only to trials in U.S. district courts. 18 USC § 3510. By expressly providing that the new statute would apply only to pending and future cases, Congress indicated that it was not attempting to breathe life into the older statute— § 10606—as a rule of evidence. Under these circumstances, it is far from clear that, as a matter of law applicable to the trial of criminal cases in the U.S. district courts, § 10606 superceded Fed.R.Evid. 615. The ambiguities concerning the language, legislative history, and judicial interpretation of § 10606 fall far short of the clarity that we found in applying the tolling provision in the Right to Financial Privacy Act, 12 USC § 3419, to proceedings under the UCMJ. *See Dowty,* 48 MJ at 109.

Government counsel has offered no explanation as to why the President has not amended Mil.R.Evid. 615 to enhance victim rights in the military justice system in the 9 years since passage of § 10606 or in the more than 2 years that have passed since enactment of the Victim Rights Clarification Act of 1997. It may well be that the President or his advisors believe that the language of the federal rule must be modified to meet the unique circumstances of the court-martial process and they are in the process of drafting the appropriate language. Alternatively,

---

2. The Department of Defense is considering a proposal that would amend Mil.R.Evid. 615 to provide that the rule does not authorize exclusion of "any victim of an offense from the trial of an accused for that offense because such victim may testify or present any information in relation to the sentence or that offense during the Courts-Martial presentencing proceedings." Notice of Proposed Amendments to Manual for Courts, United States (1998 ed.), 64 Fed.Reg. 27761 (1999)(proposed May 21, 1999).

3. J. Weinstein & M. Berger, 4 *Weinstein's Federal Evidence* § 615.04[4] (2d ed.1998); S. Saltzburg, M. Martin & D. Capra, 2 *Federal Rules of Evidence Manual* 1169–70 (7th ed.1998).

4. It is noteworthy that a parallel text on military law makes no suggestion that Mil.R.Evid. 615 is superseded by § 10606. S. Saltzburg, L. Schinasi & Schlueter, *Military Rules of Evidence Manual* 822–27 (4th ed. 1997 & 1998 Supp.).

it may be that, in view of the significant differences between military and civilian sentencing, particularly in non-capital cases, the President and his advisors have not decided whether civilian procedures should be applied, or if applied, whether they should be significantly modified under the standards set forth in Article 36 of the UCMJ. These possibilities indicate why Congress determined that the means of incorporating federal civilian procedures should be through the deliberative process of amending the Manual for Courts–Martial under Article 36 rather than through the uncritical application of statutes outside the UCMJ.

The President, in signing the Victim Rights Clarification Act of 1997, noted that the Act would

> ensure that victims of crime and their families will not be prevented from attending a criminal trial in Federal court simply because they intend to exercise their right to give a statement during a sentencing hearing, once guilt has been decided.... [W]hen someone is a victim, he or she should be at the center of the criminal justice process, not on the outside looking in. The Act, of course, does not limit the courts' authority and obligation to protect the defendant's right to a fair trial under the due process clause.

33 Weekly Comp. Pres. Doc. 386 (March 19, 1997). The President has ample authority to promulgate rules that provide victims who testify in courts-martial with the same rights as victims who testify in U.S. district courts, so long as such rules are not drafted in a manner that is contrary to or inconsistent with the UCMJ. *See* Art. 36. If Government counsel or others involved in the administration of military justice believe that such rules should apply in courts-martial, the appropriate route is not through litigation involving statutes outside the UCMJ that are subject to interpretative uncertainties, but through amendments to the Manual for Courts–Martial or, if necessary, though legislative changes.

### IV. Effect of the Erroneous Ruling on Sequestration

■ For the reasons set forth in Part III, we conclude that the military judge erred in relying on 42 USC § 10606 as the basis for rejecting the motion to sequester the victim and her mother. Nonetheless, we conclude that the error was harmless. The witnesses in question were absent through most of the trial and observed only two rebuttal witnesses. Appellate defense counsel has not demonstrated how the testimony of the rebuttal witnesses would have affected the veracity of the testimony provided by the victim and her mother on sentencing. The victim and her mother provided victim impact testimony and did not address controverted factual matters in which testimony could have been recast after hearing testimony provided by the two rebuttal witnesses. In those circumstances, the error did not materially prejudice appellant's substantial rights. Art. 59(a), UCMJ, 10 USC § 859(a). *See Government of the Virgin Islands v. Edinborough,* 625 F.2d 472 (3d Cir.1980).

Appellant contends that he was prejudiced by the error because the members of the court-martial panel, who had been active in asking questions prior to the appearance of the victim and her mother, asked no further questions after they entered the courtroom. If this had been a concern for the defense, the appropriate time to address it would have been at trial, by asking the military judge to *voir dire* the members. In the absence of such action, reliance on post-trial speculation about the thought processes of panel members does not provide a sufficient basis to show prejudice.

### V. Conclusion

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.