**UNITED STATES**

v.

**Albert F. DUCHARME, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCCA 200100233.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 11 June 1999.

Decided 12 March 2004.

Capt E.V. Tipon, USMC, Appellate Defense Counsel.

Capt Glen R. Hines, USMC, Appellate Government Counsel.

Before PRICE, Senior Judge, SUSZAN, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

A military judge, presiding at a general court-martial consisting of officer and enlisted members, convicted the appellant, pursuant to his pleas, of willful dereliction of duty by failing to wear his seatbelt at all times while the driver of an M1046 TOW Missile Carrier, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Contrary to the appellant's pleas, the members convicted him of negligently destroying an M1046 TOW Missile System, military property of the U.S. Government of a value in excess of $350,000.00, negligently damaging an M1046 TOW Missile Carrier, military property of the U.S. Government of an amount in excess of $22,000.00, reckless driving, and negligent homicide, in violation of Articles 108, 111, and 134, UCMJ, 10 U.S.C. §§ 908, 911, and 934. The appellant was sentenced by the members to confinement for 12 months, reduction to pay grade E–1, total forfeiture of pay and allowances, and a bad-conduct discharge. The convening authority approved the adjudged sentence and, except for the bad-conduct discharge, ordered the sentence executed.

After carefully considering the record of trial, the appellant's two assignments of error, and the Government's response, we conclude that, except as addressed below, the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Failure to Exclude and Sequester Witness

In the appellant's first assignment of error, he asserts that the military judge committed prejudicial error by failing to exclude and sequester the negligent homicide victim's mother during trial on the merits, because she later testified on the Government's behalf during sentencing. Based on Military Rule of Evidence 615, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) and *United States v. Spann*, 51 M.J. 89 (C.A.A.F. 1999), the appellant avers that this court should set aside the findings and the sentence and order a rehearing. We disagree.

Pursuant to the authority granted by Congress in Article 36, UCMJ, 10 U.S.C. § 836, the President promulgated Mil. R. Evid. 615, which provides that, "[a]t the request of the [trial counsel or trial defense counsel] the military judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and the military judge may make the order *sua sponte*." *See Spann*, 51 M.J. at 90. The reason for excluding and sequestering witnesses is based upon the conviction that if witnesses were allowed to hear each other's testimony, the possibility for collusion or the unconscious melding of their stories is simply too great. *United States v. Gordon*, 27 M.J. 331, 332 (C.M.A. 1989).

On 22 December 1998, the appellant was the driver of an M1046 TOW Missile Carrier equipped with a crew-served M1046 TOW Missile Weapons System when, while executing a tactical training exercise at Multa Ridge, Kuwait, the vehicle was involved

in a single vehicle accident. The accident resulted in the complete destruction of the weapons system, substantial damage to the carrier, and the instantaneous death of a crewmember, Lance Corporal (LCpl) Lucas J. Williams, U.S. Marine Corps. The appellant was charged with, *inter alia*, the involuntary manslaughter of LCpl Williams, but was found guilty of the lesser included offense of negligent homicide.

The trial counsel informed the trial defense counsel that the victim's parents would be present for trial and the mother of the victim would be called as a witness during sentencing. The trial defense counsel moved pursuant to RULE FOR COURTS-MARTIAL 806(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), to exclude LCpl Williams' parents from the courtroom during the court-martial proceedings, "[d]ue to the manner that the courtroom is permanently arranged the victim's parents face the members and the members in return face the parents." Appellate Exhibit XIV at 2. R.C.M. 806(b) provides, in part:

> *Control of Spectators.* In order to maintain the dignity and decorum of the proceedings or for other good cause, the military judge may reasonably limit the number of spectators in, and the means of access to, the court room, exclude specific persons from the courtroom, and close a session[.]

■ Even though the exclusion of some or all of the spectators from part or all of an accused's court-martial is authorized, it must be used very sparingly, with the military judge's decision favoring a completely open and public trial. *United States v. Terry,* 52 M.J. 574, 577 (N.M.Ct.Crim.App.1999)(citing *United States v. Short,* 41 M.J. 42, 43 (C.M.A.1994)); *see* R.C.M. 806(b), Discussion. "[T]he party seeking closure must advance an overriding interest that is likely to be prejudiced; the closure must be narrowly tailored to protect that interest; the trial court must consider reasonable alternatives to closure; and it must make adequate findings supporting the closure to aid in review." *Terry,* 52 M.J. at 577 (quoting *United States v. Hershey,* 20 M.J. 433, 436 (C.M.A.1985)(internal quote omitted), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986)).

While the military judge refused to exclude the victim's parents from the courtroom based on R.C.M. 806(b), he instructed the trial defense counsel that he would entertain an instruction, drafted by the trial defense counsel, "to tell [the members] that the [victim's] parents are in the back of the courtroom and they are to disregard any of the, as you put it, the eye-wiping of the parents[.]" Record at 33. The trial defense counsel offered no such instruction. To this point in the court-martial, Mil. R. Evid. 615 had not been invoked by either party.

The trial counsel subsequently requested that the court "allow Mrs. Williams to remain in the courtroom during the merits even though the [G]overnment intends to call her on the sentencing. [The] Government does not believe that her testimony regarding her relationship with her son will be affected by anything she might hear during the case on the merits." Record at 41–42. The trial defense counsel responded in the negative when the military judge asked if he was "going to be making an objection to [exclude and] sequester Mrs. Williams." *Id.* at 42. Although neither the military judge nor either of the counsel for the parties explicitly referred to Mil. R. Evid. 615, that rule was the military judge's implicit basis for this discussion. No further discussion on this issue occurred. Mrs. Williams was seated in the courtroom throughout the proceedings.

Twelve days after the appellant's trial, in its *Spann* decision, the Court of Appeals for the Armed Forces held that a "military judge erred in relying on 42 U.S.C. § 10606 as the basis for rejecting the motion to [exclude and] sequester the victim and her mother." *Spann,* 51 M.J. at 93; *see also United States v. Langston,* 53 M.J. 335, 336–37 (C.A.A.F.2000)(citing *Spann* for the propositions that "Mil. R. Evid. 615 applies in contested case where victim-witness who was spectator only testifies on sentence" and a "military judge erred by relying on federal statute to reject application of Mil. R. Evid. 615.").

The appellant asserts that during his trial, the victim's mother would, from time to time,

cry and audibly sob. Appellant's Motion to Attach of 5 Nov 2003, Appellant's Declarations at ¶ 5. Subsequently, once the appellant was convicted of most of the offenses, substantially as charged, the trial counsel called the victim's mother as a witness on sentencing. Her brief testimony, consisting of three pages on the record, may be summarized as her thoughts and feelings for her recently departed son and his patriotic service as a Marine. She did not comment on the appellant or the findings of the members. The trial defense counsel offered no objection to her testimony.

■ We conclude that the military judge did not err when he ruled that, under R.C.M. 806, one of the Government's sentencing witnesses, Mrs. Williams, could remain in the courtroom throughout the appellant's trial. While this court cannot discount the fact that the danger of "[e]motional displays by aggrieved family members, though understandable, can quickly exceed the limits of propriety and equate to the bloody shirt being waved[,]" *United States v. Fontenot*, 29 M.J. 244, 252 (C.M.A.1989)(quoting *United States v. Pearson*, 17 M.J. 149, 153 (C.M.A.1984)), there is no evidence on the record of any *improper* emotional outbursts by either of the victim's parents, or any effect on the members' deliberations.

■ At the time of the appellant's trial, Mil. R. Evid. 615 provided that, with certain exceptions, "[a]t the request of the prosecution or defense [counsel] the military judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses[.]" We hold that when the trial counsel raised the issue, the trial defense counsel affirmatively waived the issue when asked if he was going to object, he specifically said "No." Record at 42. Even assuming the military judge erred, we find that the error does not comprise reversible error.

■ Where a military judge improperly fails to sequester witnesses over trial defense counsel's objection, an appellate court must apply a harmless-error analysis. *Langston*, 53 M.J. at 338. While the burden is always on the Government to show that the "failure to sequester was harmless[,]" *id.* (quoting

*United States v. Jackson*, 60 F.3d 128, 136 (2d Cir.1995)), the appellant has failed to articulate what, if any, harm or material prejudice he suffered from Mrs. Williams being present during findings and then being allowed to testify on sentencing. The record is simply devoid of any evidence that Mrs. Williams' presence in court affected the testimony she gave during sentencing. As such, we find that any error which may have occurred by the military judge's failure to exclude and sequester LCpl Williams' witness-mother, *sua sponte* or otherwise, was harmless. Accordingly, we decline to grant relief.

## Unreasonable Multiplication of Charges

In the appellant's second assignment of error, he correctly asserts that Specifications 1 and 2 of Charge II, negligent destruction of an M1046 TOW Missile System and negligent damage of an M1046 TOW Missile Carrier, actually allege a single incident and, therefore, represent an unreasonable multiplication of charges (UMC). The appellant avers that this court should set aside the findings of guilty to either Specification 1 or Specification 2 of Charge II; approve a finding of guilty to a consolidated specification; and, remand the appellant's case for a new convening authority's action. We agree only in part.

■ In determining whether there is an unreasonable multiplication of charges, we consider five factors: (1) Did the accused object at trial; (2) Are the charges aimed at distinctly separate criminal acts; (3) Do the charges misrepresent or exaggerate the appellant's criminality; (4) Do the charges unreasonably increase the appellant's punitive exposure; and (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges and specifications? *United States v. Quiroz*, 57 M.J. 583, 585–86 (N.M.Ct.Crim.App.2002)(en banc), *aff'd*, 58 M.J. 183 (C.A.A.F.2003)(summary disposition). In deciding the issue of UMC, we should also consider R.C.M. 307(c)(4), Discussion, which provides the following guidance: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."

That guidance was not followed in the appellant's case.

 While the appellant did not raise the issue of UMC at trial and the military judge ultimately instructed the members that Specifications 1 and 2 of Charge II should be considered as one transaction for sentencing purposes, upon the conclusion of the Government's case on the merits, the military judge should have *sua sponte* ordered Specification 2 of Charge II merged with Specification 1 of Charge II. The Government's evidence on the merits clearly reveals that the appellant's reckless manner of driving the M1046 TOW Missile Carrier directly caused the simultaneous negligent destruction of the M1046 TOW Missile System and the negligent damaging of the M1046 TOW Missile Carrier, which were connected as a mobile crew-served weapons system. We shall take corrective action in our decretal paragraph.

### Conclusion

Accordingly, Specification 2 of Charge II is merged with Specification 1 of Charge II. Specification 1 of Charge II is amended by adding the words, "and damage one (1) M1046 Tube Launched, Optically tracked, Wire Command Link, Guided Missile System (TOW) Carrier, military property of the United States, the amount of the said damage being in the sum of about $22,436.39." This clause is added as the last clause of Specification 1 of Charge II. Specification 2 of Charge II is dismissed. Since the two specifications were considered as the same transaction for sentencing (i.e., multiplicious for sentencing), there is no need to reassess the sentence in light of our merger action herein. We affirm the remaining findings and the sentence, as approved by the convening authority. We order that the supplemental promulgating order accurately report the findings of the appellant's court-martial.

Senior Judge PRICE and Judge SUSZAN concur.